IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HENRY ROEBEN,

|  |  |
|---|---|
| Plaintiff, | OPINION AND ORDER |
| v. | 13-cv-641-wmc |

HOME DEPOT, INC.,

Defendant.

---

Proceeding *pro se*, Henry Roeben alleges that defendant Home Depot, Inc. terminated his employment as a sales associate in violation of the Age Discrimination in Employment Act (the "ADEA").  29 U.S.C. §§ 621-34.  Defendant has filed a motion for summary judgment and both parties have submitted briefing.  For reasons set forth below, defendant's motion for summary judgment will be granted and this case will be dismissed.

UNDISPUTED FACTS

Unless otherwise noted, the court finds the following facts material and undisputed.

**A.  Roeben's Employment as a Home Depot Sales Associate**

Roeben was born on March 29, 1950.  In 2005, Roeben started working at the Home Depot located at 4550 Verona Road, Madison ("Store 4909"), as a sales associate in the plumbing and electrical departments.

At the start of his employment, Roeben was advised that the "first priority" of a sales associate was "to provide excellent customer service."[1] Accordingly, sales associates at Home Depot are required to "provide fast, friendly service by actively seeking out customers to assess their needs and provide assistance."[2]  Similarly, ensuring customer satisfaction is emphasized as one of the key areas of accountability for sales associates at Home Depot.[3]

Roeben was also aware that sales associates at Home Depot were expected to follow a Code of Conduct, which established both major and minor work rule violations.[4] A minor work rule violation might result in progressive discipline and ultimately termination of employment.[5]  A major work rule violation is considered so severe that it normally warrants immediate termination.[6]

Pursuant to the Code of Conduct and the policies on customer service, Roeben was required to actively seek out and greet customers to the best of his ability.  Roeben understood that minor work rule violations included failing to engage a customer, such as not greeting every customer and not asking open-ended questions.[7] Roeben also acknowledged that refusing to help a customer or being rude to a customer were major work rule violations under the Code of Conduct.[8]

---

[1] Dkt. # 41, *Roeben Dep.* at 53:9-54:3, 54:9-55:2.
[2] Dkt. # 41, *Roeben Dep.* Exh. 1.
[3] Dkt. # 41, *Roeben Dep.* at 36:20-37:8.
[4] Dkt. # 41, *Roeben Dep.* at 68:1-20.
[5] Dkt. # 41, *Roeben Dep.* at 69:3-6.
[6] Dkt. # 41, *Roeben Dep.* at 68:23-69:2.
[7] Dkt. # 41, *Roeben Dep.* at 73:6-9.
[8] Dkt. # 41, *Roeben Dep.* at 72:15-19.

## B. Roeben's Performance Record

Before 2008, Roeben received several awards for outstanding customer service while employed at Home Depot and was once named Employee of the Month.[9] In his annual performance appraisal for 2009, however, Roeben received the lowest possible score of "Improvement Needed" under two categories of Home Depot's "Customer FIRST Behaviors policy": (1) "Find – Makes customers the first priority, actively seeks out customers, greets all customers, offers assistance"; and (2) "Thank – Thanks the customer and asks him/her to shop with us again."[10]  In 2010, Roeben again received the lowest possible score in these two categories.[11]

More specifically, on or about December 7, 2010, a customer who had been shopping at Store 4909 approached the electrical department supervisor, Ben Hopkins, to complain about an incident involving Roeben.[12]  After asking Roeben to remove a light bulb from a fixture the customer was considering purchasing because the glare made it difficult to see the fixture itself, the customer advised Hopkins that Roeben simply said "no" and walked away.  Because of Roeben's rude behavior, the customer further stated that he would no longer shop at Home Depot.  This incident resulted in Roeben being given a "final written warning" or "performance discipline notice" for committing a major work rule violation.[13]

---

[9] Dkt. # 41, *Roeben Dep.* at 75:10-77:11.

[10] Dkt. # 41, *Roeben Dep.* at 78:3-25, 79:1-11 & Exh. 10.

[11] Dkt. # 41, *Roeben Dep.* at 83:23-84:1.

[12] Dkt. # 38, *Hopkins Decl.* at ¶ 6 & Exh (*Performance/Discipline Notice*).

[13] Dkt. # 38, *Hopkins Decl.* at ¶ 5.

For his part, Roeben recalls having a conversation with an assistant store manager regarding a complaint that had been filed by a customer "for failing to power down a light cloud."[14]  Roeben disputes, however, that he received a performance discipline notice during his employment.[15]

### C. February 12 Sleeping Incident

On February 12, 2011, Assistant Store Manager Marcus Kemblowski observed Roeben sitting on a chair at the electrical department service desk, slouched over with his eyes shut, apparently sleeping.[16]  At the time Kemblowski made this observation, it was a busy Saturday afternoon at the store.  Kemblowski proceeded to assist customers for approximately five minutes.  During this time, Roeben continued to remain stationary in a slouched position and failed to engage with or assist customers.

The tool rental department supervisor, Robert Schloss, also observed Roeben sleeping at the electrical department service desk and failing to pay attention to the customers around him.[17]  Afterward, Schloss spoke with Kemblowski, who confirmed his observations.

Kemblowski and Schloss then spoke to Operations Assistant Manager Sarah Lukes, who it turned out had separately witnessed Roeben sitting at the electrical department's

---

[14] Dkt. # 41, *Roeben Dep.* at 102:9-10.
[15] Dkt. # 41, *Roeben Dep.* at 99:21-25, 100:16, 101:13-16.
[16] Dkt. # 37, *Kemblowski Decl.* at ¶ 5.
[17] Dkt. # 39, *Schloss Decl.* at ¶ 5.

sales desk on February 12, with his head resting in his hands and his neck slouched over.[18] While Lukes could not get a clear enough view to confirm that Roeben was in fact sleeping, his eyes appeared closed.   At the time, the electrical sales desk was in a prominent position near the front of the store, immediately visible to customers who used the main entrance.

After both Kemblowski and Schloss reported seeing Roeben asleep at the electrical department service desk, Lukes contacted the Home Depot's Associate Advice and Counsel Group ("AACG") for their recommendation.   The AACG is a resource that provides advice to store leadership regarding employee conduct issues and policy violations.[19]   After reviewing the facts related to the February 12 incident, including written statements from Kemblowski and Roeben, who denied sleeping, the AACG notified Kemblowski and Lukes that it recommended terminating Roeben's employment for two reasons:  (1) his behavior constituted a violation of the Home Depot Code of Conduct regarding customer service; and (2) Roeben had already been issued a final written warning from a previous incident of poor customer service two months earlier.

### D. Termination

After receiving the AACG's recommendation, Lukes drafted a termination notice for Roeben, which she provided to the district human resources manager, Elisha Barudin. On February 16, Barudin approved the termination notice.

---

[18] Dkt. # 35, *Lukes Decl.* at ¶ 6.
[19] Dkt. # 35, *Lukes Decl.* at ¶ 8.

On February 18, Lukes and Kemblowski met with Roeben to notify him of the Home Depot's decision to terminate his employment for violating company policy related to customer service.  At that meeting, Kemblowski read from the termination notice, which stated, in part:

> On Saturday, February 12th, 2011 around 12:00 p.m., Henry Roeben was observed sitting at the electrical desk with his head in his hand and his eyes closed.  In doing so, Henry failed to provide customer service to the customers in his department and failed to engage the customers that walked past him.[20]

Roeben was 60 years of age at the time of his termination.  He was replaced with an employee who was three years younger.[21]

### E.  Administrative Challenge

On May 20, 2011, Roeben filed a timely complaint of discrimination with the Madison Department of Civil Rights Equal Opportunities Division.  In that complaint, Roeben alleged that Home Depot treated him less favorably than other employees who were younger and terminated his employment because of his age.  Roeben alleged in particular that Kemblowski made the following comments as Roeben was walking out the door following his termination:   (1) "[Kemblowski] could target workers to fire"; and (2) Roeben "should have been part-time."[22]  On July 28, 2011, an investigator found "no probable cause" to believe that Home Depot had discriminated against Roeben on the basis of age and recommended dismissing the complaint.

---

[20] Dkt. # 35, *Lukes Decl.* at ¶ 10 & Exh. A.
[21] Dkt. # 36, *Midcalf Decl.* at ¶ 10.

Roeben appealed the finding and recommendation, prompting both parties to engage in additional discovery. On December 4, 2012, a Hearing Examiner for the Madison Equal Opportunity Commission found that the statements attributed to Kemblowski neither implicated Roeben's age nor demonstrated discriminatory animus. Ultimately, the Hearing Examiner found that: (1) Roeben did not carry his burden to demonstrate a *prima facie* case of discrimination; and (2) even if he did, Home Depot successfully presented a legitimate, nondiscriminatory explanation for his termination, which Roeben failed to discredit. Accordingly, the Hearing Examiner affirmed the initial determination of no probable cause and dismissed Roeben's complaint without a hearing.

In September 2013, Roeben filed the pending lawsuit against Home Depot in this case, alleging that he was wrongfully terminated and discriminated against due to his age, and seeking $12 million in damages.

OPINION

The purpose of summary judgment is to determine "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, shows that there is "no genuine issue as to any material fact and that

---

[22] Dkt. # 41, *Roeben Dep.*, Exh. 24.

the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The applicable substantive law dictates which facts are material. *Anderson*, 477 U.S. at 248; *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). A factual dispute is "genuine" only if the evidence is such that a reasonable jury could resolve it either way. *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the court must view all facts in favor of plaintiff, as the non-moving party, drawing all reasonable inferences in his favor. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). Even so, plaintiff may not simply rest on the allegations in his complaint; rather, he "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires a trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 324). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted)).

In February 2014, Roeben received instructions on filing submissions related to summary judgment. (Dkt. # 14, *Procedure to be Followed on Motions for Summary Judgment*, attached to the pretrial conference order.) As explained in those instructions, if a defendant files a motion for summary judgment, then the plaintiff is directed to file a

8

response to the defendant's proposed findings of fact, a brief with opposing legal arguments, and evidentiary materials that support plaintiff's fact responses and proposals. (*Procedure*, II.A.1-3.)   The plaintiff is supposed to propose each fact in a separate paragraph and support each fact by referring to the evidence he had submitted in support. (*Procedure*, II.D.1-2.)

While Roeben filed a response to Home Depot's summary-judgment motion, he failed to comply fully with the court's procedures to be followed on motions for summary judgment.  (*See* Dkt. # 14.)   Instead, Roeben appears to rest on his pleadings.   In particular, Roeben's brief in response to the summary judgment motion is only one-page long and does not properly join issue with the facts or proposed legal arguments raised by Home Depot.   Where a party has not responded to a proposed finding of fact, the court may accept the proposed fact as undisputed if it is properly and sufficiently supported by admissible evidence.  *See, e.g., Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994); *Kolpien v. Family Dollar Stores of Wis., Inc.*, 402 F. Supp. 2d 971, 975 (W.D. Wis. 2005).

Although Roeben is proceeding *pro se*, he is still required to comply with procedural rules.  *See Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("Although civil litigants who represent themselves ('*pro se*') benefit from various procedural protections not otherwise afforded to the ordinary attorney-represented litigant . . . , *pro se* litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines.") (internal citations omitted).   Nevertheless, the court has attempted to analyze Roeben's

claims under the governing legal standard that applies in the employment discrimination context.

Because the record establishes that Home Depot terminated Roeben for legitimate, nondiscriminatory reasons and not due to his age, Home Depot is entitled to summary judgment on Roeben's claim under the ADEA.

Among other things, the ADEA makes it unlawful for an employer to "discharge any individual . . . because of such individual's age." *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012) (quoting 29 U.S.C. § 623(a)(1)).   To establish a *prima facie* violation of the ADEA, "an employee must show that age actually motivated the adverse employment action at issue.  Put differently, age must have played a role in the employer's decision-making process and had a determinative influence on the outcome." *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 776 (7th Cir. 2013) (quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010)).   An employee may make this showing using either the direct or indirect method of proof.  *See Mullin*, 732 F.3d at 776; *see also Hutt v. AbbVie Prods., LLC*, 757 F.3d 678, 691 (7th Cir. 2014).   Roeben satisfies neither method of proof here.

## I.     Indirect Method of Proof

The indirect method of proving discrimination is set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), and requires a plaintiff to establish that: (1) he is a member of the protected class (for age discrimination over 40 years old); (2) he was performing

10

well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. *See Franzoni v. Hartmarx Corp*., 300 F.3d 767, 771-72 (7th Cir. 2002) (citation omitted).   The burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action.   *Id*.   If the defendant makes this showing, then the burden shifts back to the plaintiff, who must show that the proffered reason is pretextual.   *Id*.

Here, Roeben's indirect method of proof fails on every level.   As an initial matter, Home Depot maintains that Roeben failed to come forward with proof that other, similarly situated, substantially younger employees were treated more favorably.   In that respect, Roeben admitted during his deposition that he is aware of no situations at the Home Depot in which a manager believed that an employee was sleeping on the job and failed to discipline the employee.   (Dkt. # 41, *Roeben Dep*. at 126:24-127:3.)   Moreover, Roeben offers no evidence that a younger employee was not fired under similar circumstances.

Even if Roeben had advanced sufficient evidence to establish a *prima facie* case of age discrimination, he does not dispute that several witnesses saw him slouching over with his head down in a sleeping posture while he sat at the electrical department service desk during a busy Saturday afternoon on February 12, 2011.   Nor does Roeben dispute that sleeping on the job and ignoring customers constitutes a major work rule violation, justifying termination under the Home Depot Code of Conduct.

Unsurprisingly, many courts, including the Seventh Circuit, have also found that finding an employee sleeping on the clock constitutes a legitimate, nondiscriminatory rationale for termination. *See, e.g., Reed v. Amax Coal Co.*, 971 F.2d 1295, 1299-1300 (7th Cir. 1992) (upholding discharge of a Title VII plaintiff for sleeping on the job); *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (finding a legitimate, nondiscriminatory reason for termination where an employee violated company policy by sleeping on the job); *Ogleshy v. Hy-Vee, Inc.*, 214 F. App'x 829, 833-34 (10th Cir. 2007) (sleeping on the job is a legitimate, nondiscriminatory reason for termination, not a pretext for age discrimination); *Pollard v. Azcon Corp.*, 904 F. Supp. 762, 770 (N.D. Ill. 1995) (finding that discharge for sleeping on the job constitutes a legitimate, nondiscriminatory reason for termination); *Perry v. Pierce Chem. Co.*, No. 00-cv-50186, 2002 WL 992658, at *1(N.D. Ill. May 14, 2002) ("Sleeping on the job does not meet an employer's legitimate job expectations.").

Having presented a legitimate, nondiscriminatory reason for Roeben's termination, the burden shifts back to Roeben to prove that the stated reason is pretextual. Roeben, however, has not responded to any of the burden-shifting arguments outlined by Home Depot in its brief. Although Roeben disputes that he was sleeping, a plaintiff's self-serving denial that he slept on the job is not enough to defeat a summary judgment motion. *See Pollard*, 904 F. Supp. at 770. To defeat summary judgment under the *McDonnell Douglas* burden-shifting framework, Roeben was obligated to point to specific factual support in the record, *see Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir.

12

2004), showing that the proffered reason for his termination was a pretext for discrimination. *See Franzoni*, 300 F.3d at 771-72.

Moreover, a pretext "is a deliberate falsehood." *Forrester v. Rauland-Borg Corp*., 453 F.3d 416, 419 (7th Cir. 2006) (citations omitted). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered." *Ptasnik v. St. Joseph Hosp*., 464 F.3d 691, 696 (7th Cir. 2006) (quoting *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)). In other words, the court's inquiry focuses not on the actual occurrence of the alleged acts which formed the basis for termination, but rather looks at "whether the employer honestly believes in the reason it offers." *Kralman v. Illinois Dep't of Veterans Affairs*, 23 F.3d 150, 156 (7th Cir. 1994) (citations omitted); *see also Hague v. Thompson Distrib. Co*., 436 F.3d 816, 823 (7th Cir. 2006) (observing that so long as the employer honestly believes the proffered reason for termination, pretext has not been shown).

Here, three separate employees (Kemblowski, Schloss and Lukes) observed Roeben with his eyes closed at the electrical department service desk during a busy Saturday shift. Further, Kemblowski and Schloss both observed that Roeben was ignoring customers as he appeared to sleep. When confronted with these facts (none of which Roeben refutes), Kemblowski and Lukes further sought advice from the Home Depot AACG, which recommended termination of Roeben's employment based on his record of poor performance in the area of customer service. Lukes then took the additional step of drafting a termination notice for review by the district human resources manager

13

(Barudin), who also approved termination.   Roeben provides *no* basis for any reasonable trier of fact to find that Home Depot's carefully considered decision to terminate Roeben for violating customer service standards was pretextual on this record.

For all these reasons, Roeben's claim of discrimination based on the indirect method of proof fails.

## II.      Direct Method of Proof

Under the direct method of proof, a plaintiff must present direct evidence of unlawful discrimination or establish a "convincing mosaic of circumstantial evidence . . . that point[s] directly to a discriminatory reason for the employer's action." *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012) (quoting *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004) (internal citations and quotations omitted)). "Direct evidence requires an admission of discriminatory intent, *i.e.* 'smoking gun' evidence." *Hutt*, 757 F.3d at 691 (quoting *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014) (internal quotation marks and citations omitted)). "Circumstantial evidence," by contrast, "typically includes (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly-situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but

14

was passed over [or terminated] in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Id*.

Roeben has no "smoking gun" evidence in which Kemblowski, Lukes or any other Home Depot employee admits discriminating against Roeben based on his age. The entirety of Roeben's proof consists of circumstantial evidence in the form of a statement attributed to Kemblowski. Specifically, when Roeben was given notice of his termination on February 18, 2011, Kemblowski reportedly commented that Roeben "should have been working part-time" because of his age.[23] This after-the-fact evidence alone is insufficient to meet the direct method of proof standard.

First, Kemblowski denies that he made the comment.[24] Lukes, who states that she was present for the entire meeting on February 18, also contends that Kemblowski "made no reference whatsoever to Roeben's age."[25] Most telling, Roeben has not responded to the Home Depot's proposed findings of fact regarding what was said during the termination meeting.

Second, Home Depot points out that the supposed remarks by Kemblowski are suspect because Roeben never included an age-related comment in any of his submissions during the administrative proceeding before the Madison Equal Opportunity Commission. When asked during his deposition to explain the contradiction between his previous submissions and his deposition testimony regarding Kemblowski's alleged comments, Roeben was unable to provide a reasonable explanation. Instead, Roeben responded that

---

[23] Dkt. # 41, *Roeben Dep.* at 117:8-9.
[24] Dkt. # 37, *Kemblowski Decl.* at ¶ 10.

an unidentified lawyer with whom he allegedly consulted regarding his MEOC case told

him not to include any reference to Kemblowski's alleged comments:

> Q:    And in appealing [the MEOC's decisions,] you never raised any comments that anyone at Home Depot allegedly said to you about your age, correct?
>
> A:    That's correct.
>
> Q:    Now, three years later, you're suddenly claiming that there was a statement made to you about your age, and it never occurred to you in however many years in dozens of submissions to the MEOC that you should include that statement when you're making an age discrimination claim?
>
> A:    It was suggested that it was not necessary to spell that out.
>
> Q:    You're telling me today that you think in an age discrimination claim, that you did not think it was necessary to spell out the one comment that you're now alleging was related to your age?
>
> A:    I was told by an attorney, no.

(Dkt. # 41, Roeben Dep. at 183:17-25, 184:1-11.)   When asked, Roeben also could not

remember the name of the attorney who assisted him with his administrative case.   (*Id*. at

124:17-21.)   Ultimately, Roeben testified that he had "no idea" why he failed to raise the

allegation that Kemblowski told him that he should have been a part-time employee

because of his age at any previous point in more than three years of litigation against

Home Depot.   (*Id*. at 184:25-185:9.)

Third, even accepting Roeben's testimony as true, the isolated, after-the-fact

statements attributed to Kemblowski do not create a convincing mosaic that points

directly to age discrimination as the reason for Roeben's termination.   To the contrary, it

---

[25] Dkt. # 35, *Lukes Decl.* at ¶ 10.

is undisputed that Roeben was replaced by an employee who was only three years younger than Roeben. Moreover, apart from his statement that Roeben should have been part-time, which is arguably ambiguous, Roeben presents no proof demonstrating that Kemblowski acted with discriminatory animus. Kemblowski did not start working at Store 4909 until February 7, 2011, shortly before the sleeping incident on February 12, and Roeben's termination on February 18.   Before the date of Roeben's termination, Kemblowski interacted with Roeben only once, on February 11, when they spoke for less than 30 minutes.

More importantly, the evidence of Roeben sleeping on the job did not come from Kemblowski alone.  Nor was the decision to terminate Roeben's employment made by Kemblowski alone.  It was a collective decision made by Lukes and Kemblowski only after they received a recommendation to terminate from the Home Depot AACG.  The termination decision was then further reviewed by the district human resources manager (Barudin).

In other words, contrary to Roeben's apparent contention, Kemblowski was not the "cat's paw" that singularly influenced or proximately caused Roeben's termination.  *See Fleishman*, 698 F.3d at 605; *Martino v. MCI Commc'ns. Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009); *see also Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) (explaining the "cat's paw theory of liability" for employment discrimination)(citation omitted).  Because there were at least two layers of analysis

17

performed in connection with his termination, Roeben cannot succeed under the direct method of proof.  *See Martino*, 574 F.3d at 452-53.

Absent a genuine issue of material fact for trial on the direct or indirect method of proving an ADEA claim, Home Depot is entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendant Home Depot, Inc. (dkt. # 32) is GRANTED and this case is DISMISSED.

2. The clerk of court is directed to close this case.

Entered this 29th day of December, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge